All right, counsel, if you're ready to proceed, we will hear from Mr. Buckmiller first. May it please the Court, Your Honor. Matt Buckmiller from Buckmiller, Boyette & Frost Law Firm with me as my partner, Blake Boyette. There are four fundamental issues that are for the Court to consider today. The first predominant issue for the Court is whether the bankruptcy code preempts plaintiff's state law claims. Said another way is whether a person that has filed bankruptcy and received a discharge in bankruptcy should have different or less rights than a person who has not. The district court granted summary judgment to the defendant, PHH, on all claims. It found that plaintiff's claims for violations of the North Carolina Debt Collection Act, as well as the intentional infliction of emotional distress and NIED claims were preempted by the bankruptcy code. Can I stop you right there just to make sure I understand how you're framing that preemption issue? You've referred to the discharge provision, which suggests you're talking about post-discharge conduct by the defendants. Is your argument about post-discharge conduct only or pre-discharge conduct? It's a good question, Your Honor. We believe that it is both pre-discharge and post-discharge, but what I'm predominantly going to focus on today is post-discharge. How is it possible that it's pre? I thought all this happened after the discharge. No, Your Honor. And I'll just maybe get into the facts a little bit, and that will help facilitate a discussion of this. The point of the bankruptcy is a fresh start. The debtor filed a Chapter 13 plan in which the automatic stay automatically goes into effect, which prohibits a creditor from trying to collect or do anything with respect to the differentiation between when the automatic stay goes in and the actual discharge. Yes, Your Honor. I'm talking discharge here. After the discharge, Your Honor, there were numerous calls and attempts to collect on a debt that was not owed. The discharge is like an order. The discharge is an order. Your Honor, just a minute here. Follow me. Follow me. We're going to let you get there. I just want to make sure I understand it. You tell me if I'm wrong on it. The discharge is an order. It is enforceable by contempt. Yes, sir. Is automatic stay enforceable by contempt? It is enforceable by a specific private statute. But it's not enforceable by contempt. I've not seen it enforceable by contempt because there's a specific statute that delineates when you can use it. A violation of automatic stay tells you you do that, you're really in trouble because the statute tells you what's going to happen. When it comes to a discharge, then the question is whoever's doing it can be held in contempt. Correct. And except, and this is what our case is about, is for recovering for violations of the North Carolina Debt Collection Act post-discharge. So we have a situation where after discharge, the debtor has no further obligation to the creditor whatsoever. That's the point of the discharge. That's the point of the bankruptcy is to get a fresh start. And in this instance, after the debtor received his discharge. Because he's got a house with his wife's name on it, too, and she is not part of the bankruptcy proceeding. She is not part of the bankruptcy and their divorce was in 2011, which was five years before the actual discharge. That's the strangest thing I've ever heard in terms of how that would occur. His name remained on the house even though he's suspended from the real property. So he is still in joint ownership with the wife, with the ex-wife? Until there is a foreclosure, then he remains. He was entitled, both of them, and now it's Tennessee and Common because they're no longer married. That's correct. He's got a house at Tennessee Common. She, there's a debt on that house. She's not discharged from it. He is on it. The debt collectors then send notices out, I guess, to the name there, wherever it goes to him. It puts him on it because he's still on this title. And he rightly says, you shouldn't do that because I don't owe this debt on it. And then they got a disclaimer on this note that says if you've been out of bankruptcy, then you don't have to worry about this. But the credit company, credit agencies and others don't pay that attention, you say. It's an odd case. I don't know how we get here on this. I looked at it and see this guy, is he still in the Marine Corps? Yes. I should have Judge Diaz. You may be recused from here, Judge. No, I know it will not affect that. With any luck, I would be. So now he's coming to us. No one's asking him to pay anything. The other companies, they recognize he's discharged. But he now seeks some relief because he has all these negative things that have happened to him because they're sending him these debt notices. I think that's generally correct. So after the discharge, PHH and its predecessor, Auckland, continued to collect on the debt. And they did that via mortgage statements. Well, that's not entirely accurate because your client, even though the debt was discharged, he surrendered the property. He still had obligations with respect to the property, at least with respect to expenses and maintenance of the same. So when you say the creditor and your client were done with each other, that's not entirely accurate, right? Well, no, Your Honor, I think it is accurate. And I think what you're referring to is the Henry Rose case, which talks about, in essence, what happens when a debtor surrenders his property. And what the court in that case said, in which they've extrapolated, I think, to something that's incorrect, is that a bank or a creditor has no obligation when a property is surrendered to take the deed. And they can do that for various reasons, such as they don't want to pay the property taxes, they don't want to pay the HOA dues, they don't want to maintain the property. Henry Rose does not stand for the proposition that a creditor can then, after a discharge, selectively decide which expenses it wants to pay relating to a property expense and then charge those amounts to the debtor. The relationship in the discharge provides that there is no further amount that this creditor can charge this debtor. Now, the debtor, since he is the owner, could still be responsible for property taxes or things like that where he is legally required to pay them. But Henry Rose does not stand for the proposition that a creditor can charge a debtor for whatever they think the property-related expenses are. It's solely saying it's in rem versus in personam. Here are the remedies with the property. Since the debtor is still owner of the property, he can be obligated to pay the taxes. Normally the creditor will pay the taxes because they want to reserve their lien rights and they don't want the taxing authority to foreclose. But that case does not stand for the proposition that a creditor can go in, charge whatever fees they want after a discharge, and then try and collect those fees against them. What does it mean to surrender the property in this context? It means he just left the property. It means two things. Surrender the property means that under the plan that he has no further obligations to make any payments once the discharge is entered, once all of the payments pursuant to his Chapter 13 plan. And then factually speaking, he also did leave the property. So the property has been vacant for... That's what I'm trying to get at. What does it mean? I mean, what does it mean legally to surrender the property? If you would just ask the average person on the street, he says, well, you just gave up the title to it. He didn't. He still owns the property. He surrendered the property, but his wife still is owner of it. Could he go back and live in this property? I assume, Your Honor, that he could. I don't know why a bank would not foreclose, which is what they would have to do. Simply giving them a... You could go back and just pay the mortgage on it, and he wouldn't foreclose. I'm just understanding what it means to do it. He goes back to live in it. His wife is the one-half owner of it. Debt is still on the property because wife is still on it right now. I don't know if it goes on one-half or where the house is. I'm going to work on it. This is really an intriguing case to me, the way bankruptcy and real estate law is working out here. Well, I will say, Your Honor, is that if the facts were that the creditor was only trying to collect on those debts, then that would be an important distinction for the court to have. In this case, the creditor was seeking to collect on the full amount of the debt the whole time, meaning they took no steps after the... Okay, so, yeah, I'm glad you raised that. And I don't want to get distracted by this, but if they had done what you suggested, that is simply sent a bill for the expenses related to the upkeep, taxes, whatever, you wouldn't have a claim, would you? Well, Your Honor, we're saying that they have no ability to send those bills to us because In re Rose does not allow them to charge any post-discharge expenses to our client. Well, how are they supposed to get paid then? They foreclose. That's the in rem versus in personam difference, is that all their remedies are tied to the property. None of them are tied to the person. Okay. And so if Onslow County Taxing Authority submitted a bill and Mr. Guthrie didn't pay it, they could sue him for that. But that's a direct relationship between Mr. Guthrie and the taxing authority. There's no intermediary. And I will also say that... It doesn't mean that someone should have had the husband to transfer his interest over to the wife, which is typically what happens in a divorce situation. She's got the whole loan on the house. He's discharged, but he keeps title to the house. And typically that's what happens. And I guess if that had happened here, he might not have gotten anything. But his name is still on that house. That debt is on the house. I mean, I don't know how to debt either. The one half to the whole intrigues me because that loan was on the whole house. It wasn't on one half of it. But now she has a one half interest, and she's the only one doing it. So, I mean, it's a good bar exam question for any students listening as to what that means down the road. I think it would, Your Honor. But, again, the record evidence here is that the injury rose should not apply because at all times they were seeking to collect the full amount of the debt from the debtor at all times. And there's not one shred of evidence that after the discharge, even after the order of surrender, that the creditor took one affirmative step to acknowledge the effect of the discharge. Let's go back to maybe the preemption question. I want to go at it two ways. First, since you've said most of this conduct is post-discharge, as Judge Wynn said, there's an order. An injunctive order, and one option is to seek contempt of court for a lot of injunctive order. My question is, you know, the bankruptcy code could have allowed for or provided a private cause of action for conduct inconsistent with the discharge. Why don't we, you know, they have one for the violation of the stay. Why isn't the Congress' decision not to do that part of the balancing of all the interest involved? I mean, you say bankruptcy is for a fresh start. That's certainly one purpose of bankruptcy. But bankruptcy is also to equitably treat creditors. And it's not all about the debtor. It's kind of a compromise of a variety of interest. Why don't we look at the absence of a cause of action as a decision by Congress that, you know, all you have is contempt? Well, Your Honor, when you're looking at three different types of preemption, and only one of them, the parties have agreed that there's only one type of preemption that applies here, which is conflict preemption. Why did y'all, I don't understand why y'all agreed on field preemption. A lot of the cases that talk about these things, you know, say it's preempted on field preemption. That's a separate issue for y'all, but. Your Honor, they specifically stated in their brief that they were only talking about conflict preemption. I'll address that later. And then, you know, conflict preemption. In going there, are we bound by your decision on what the law is on this case, or do we determine that? Your Honor, you determine. You can agree all you want, but it's the court that determines as to whether this amounts to conflict or field preemption. That is correct, Your Honor. Speaking of addressing it, you might want to address Judge Qualibon's concern, even from a field preemption perspective. All of the field, generally speaking, all of the field preemption cases, and this is in our first appellant brief, provide that the bankruptcy code is not so pervasive as to preempt the entire field of anything revolving around the bankruptcy code. And there's numerous Fourth Circuit cases which somewhat touch on those issues. There was one case, the Dubois case, which talked about a ability to collect on or to assert a cause of action for violations of the FDCPA, and I think a Maryland consumer protection statute. And I believe Judge Diaz, in his dissent, found that that conduct would not be preempted under the bankruptcy code. And so the overwhelming literature is that the bankruptcy code is not pervasive enough to be field preempted. Does that include conduct before discharge as well? From what I've read, that's a stronger argument for post-discharge conduct than pre-discharge conduct. That's the conflict, Your Honor. I think the timing of this is very important. I think that under the conflict preemption standard, the two things you have to show are physical impossibility or an obstacle to the bankruptcy code or the bankruptcy case. And if you look at post-discharge after a case is closed, there's no impossibility. There's no conflict there. The case is closed. The bankruptcy is closed. Everything is done. All that the credit or all that the debtor is seeking to recover is for claims that occurred post-discharge or even if it's based on an automatic state, after the case has already been closed. So there's no conflict preemption there. And there's a case that Judge Loretta Biggs in the Middle District talked about, which kind of analyzed those issues and it said, plaintiff is not seeking to hold defendants in contempt for violating the discharge order. Rather, plaintiff's claims seek to establish liability under the North Carolina NCCAA based on defendants allegedly attempting to collect a debt that was no longer subject to collection, which is the exact same issue in our case. The defendant has attempted to collect a debt that is not subject to collection. And that debt, if it was a modification, if it was a foreclosure, the law would still apply the same. The debt is not owed. So our claims do not presuppose or are predicated on a violation of the bankruptcy code. At least I guess the connection is that debt is not owed because of the bankruptcy code. And that's where the federal law gets in the place of it. Why wouldn't you file a contempt proceeding? There are several reasons in this case, one of which we're dealing with somebody with military security clearance, that the filing of reopening of a bankruptcy could trigger, as I think you've seen in the factual allegations, that his security clearance was revoked for one or two months because of the credit scores and the failure to correct the credit scores. We also would like a jury trial. And if you file a motion for civil contempt, what you're saying is you have one judge, the judge that's in this case is deceased, the bankruptcy court judge, Judge Dowd, the plaintiff's lawyer who is representing the plaintiff is also deceased. There's just no reason to be limited by that remedy, especially when you have approximately 400,000 people a year filing for bankruptcies. The point of the bankruptcy is a fresh start. The point of the bankruptcy is not to limit someone's remedies based on a creditor's collection attempts. And so we believe, and I'm almost out of time, that the Barnhill case. You're out of time, but you may go into your rebuttal if you like. Thank you. Good morning. May it please the court. My name is John Lynch. I'm here representing the Appley PHH. It's always an honor to be here, so thank you very much. I think we all can agree what started this was unfortunate. Anytime anybody files a bankruptcy, that's unfortunate, and he was divorced, filed the Chapter 13, went into it for a couple of years, then decided to surrender the property. Surrendering the property, Judge Winn, I think you might have asked the question, that's just an intention in the bankruptcy of what you want to do with the property.  Then two years after that was done, there was a discharge, and that discharge was in 2016. Ever since that time, PHH has not foreclosed, and they've paid taxes and insurance on the property, actually since 2013. How does the foreclosure work? You've got one half, one of the owners is now Tennessee and Common. You're foreclosing against that owner, who only owns a half of the property. How do you foreclose on the whole, or can you just do the half? You would foreclose on the whole because the wife wasn't paying either, so you have a default on both. The procedure would be a little different, Judge, because you'd file a motion to lift the automatic stay as to Mr. Guthrie, and then Mrs. Guthrie would just have to get notice. The reason the foreclosure wasn't done here, usually, of course, we don't want to pay taxes and insurance and not get paid on our debt for 10 years. The reason it wasn't done is because Mr. Guthrie was active duty, and you have the Soldiers and Sailors Relief Act, and you have to take certain steps under that. It wasn't done because of that, and then once this litigation was done, we don't file foreclosures without court permission when litigation. Judge, all three of you, this is an odd situation. Let me tell you from a practical, why we believe this happened. Typically, once someone surrenders the property and they get a discharge, their bankruptcy attorney sends it. If they want to get the title out of their name, the bankruptcy attorney sends a quick claim deed to the lender and says, I want out of this property. That's one opportunity that should have happened. Surrender means give it to the lender. No, surrendering doesn't have to mean that. It just means that's your intention. You have to take the practical step with the property and do a quick claim deed on the property. That's to the servicer and the lender. You're saying we want to do a deed in lieu. How can you do that from both of them? You'd need it from the wife, too. You would have to do it. That was the second opportunity, Judge, is during a divorce. So during a bankruptcy and divorce, you always clean up title. During a divorce, if you own something with someone else in real estate, you clear up the title, and this should have never happened, both at the bankruptcy stage, which was, Judge Winn, I hear you because the wife wasn't in bankruptcy and she was out of state. So that makes it you could only quick claim what you owned, and that would be we'd have to foreclose against the wife who was not in the military. But at the time of divorce, and most divorces, if you own property jointly, you would have a deed, either deed it to the wife or you would go to the lender with a quick claim deed or a deed in lieu of foreclosure. The fundamental misunderstanding here is the effect of surrendering the property and the discharge. You get discharge out of the loan. You don't get post-discharge obligations under the deed of trust for paying the taxes and paying the insurance. The N. Ray Rose case speaks directly to that. You still have obligations after that. Once you're on a title to the property, you owe taxes and you owe insurance by contract, and you have those obligations. They say fresh start, and they say we're done with this. If you're still on the title, you have the burden, not the lender, to take you off of the title. You have the burden to get off the title yourself. Counsel, on that point from a factual standpoint, accepting that, at least for the purposes of this question, if there's evidence that your client sought more than that, more than the taxes and insurance, sought the whole amount from the plaintiff, from Mr. Geiger, and if there's evidence that rather going through Mr. Geiger's attorney, you went directly to him on certain collection efforts, those seem like issues that that's the main thing he seems to complain about under the Debt Collection Act. What's the problem with asserting those things, at least for post-petition conduct? Okay, so if we were trying to seek money that was discharged, and the word discharged is all over their complaint, they're saying every time we communicated with them, every time we sent a statement, every time we called them, we were violating the discharge injunction because we were trying to seek money that had been discharged. That is preemption. That goes to the core of what bankruptcy is about. That's a violation of the discharge order. That state statute is preempted on that issue because if you want to have a discharge injunction violation, you've got to go to the bankruptcy court and get a contempt order. You heard from a person. Well, that's one option. Yeah. But why isn't the other option to prosecute your rights under a state statute that prevents that kind of conduct? That's where the bankruptcy preemption, we've cited the Gator case, we've cited the Fourth Circuit case, NBR, we've cited bankruptcy cases. You've got to show, I mean, it's not preemption. You can't just simply say preemption and that's the end of it. You've got to actually show some conflict that actually impedes the administration of a bankruptcy estate. And when you have a case where the case has been closed for many, many years, as is the allegation here, why is it at all inconsistent with a discharged party to be able to, as I said, prosecute his or her rights under state law? It doesn't seem to me. Clearly, he could do what you said, go back to the bankruptcy court, open up the case and move for contempt. That's one option. But why isn't the other equally amenable option to pursue his rights under state law? Because that would be the conflict about the rights and adjudication of what was covered by the discharge order. You want to have a uniformity of laws and uniformity of how things are applied. You don't want state courts deciding what was discharged and what's not. But the discharge, I mean, that's over. That's been ruled upon. Judge, every time there would be a violation of a discharge order, the discharge order would already be entered. It would always be post-discharge conduct violating the discharge order. You wouldn't even have a discharge order. What's your concern about uniformity? I mean, it sounds like if your client sought recovery of discharged amounts and there's a state statute for misrepresenting creditors' rights, I'm just, I mean, I get one argument is that, look, the federal, that Congress has this bankruptcy scheme. They had this one, they have an injunction order. They didn't have a cause of action. That's the same question I asked. So I kind of get that. And there's some authority that might support that. But the other side is, you know, we've got a co-equal branch of government here. And part of their sovereignty is that they get to have causes of action. And, you know, they have this. Their Congress passed, North Carolina's Congress passed these acts. And unless they're preempted, you know, I think they get to do it. And that's kind of our question is, okay, why is it preempted? I mean, the fact that there's overlap doesn't mean, you know, it's preempted. It's a direct conflict. What's the conflict? You can't adjudicate a violation of a discharge order pursuant to a state cause of action. That has to be done through a contempt proceeding. Let me also talk about. What's the case that says that specifically? We've cited six or eight bankruptcy cases. We've also cited the NVR case that talks about the depth and the predominance of the bankruptcy code. And you don't want to have conflicts between state law that adjudicates the same conduct that the bankruptcy court is supposed to. So if a state law imposes liability for seeking debts that were discharged, how does that conflict with an injunction which prohibits seeking monies that are discharged? It seems to me like it's consistent. It just provides different remedies. That's the case, Judge. It's a direct conflict between what is discharged. Because absent the discharge order, there would be no factual allegations that there's a violation of this North Carolina state statute. The entire case is about a violation of a discharge. And that's the thrust of the preemption. One factual statement I think that I'll write, and one in the record, is we had in our statements and in our phone calls disclaimers. And the exact disclaimer was approved by this court, the Fourth Circuit, in the Lovegrove case. And when we have the disclaimers, what it's saying is if it's been discharged, this communication about the past debt is just for informational purposes only. And that has been affirmed by this court. And one reason we give that information is because the personal liability may be discharged, but the information may be important because you may want to reaffirm with the lender and the servicer. When did your client first receive notice or indication from Mr. Guthrie that he's not responsible for this debt because he's been discharged from it? The discharge order was entered in 2016. And then the letters and things commenced. And at some point in time, when did he communicate to your client that these letters should not be coming to him because he's discharged? There's no direct communication on that. And it's something, Judge Wynn, even if he said it was discharged, we still send the statements and have the phone calls for informational purposes only because there's taxes. Going to someone other than just to him because it resulted in what he alleges to be some negative situations. It's one thing to send a letter to him and no one else. Where else does this communication go to? It should go to him and his wife to the extent we have it addressed. The credit people find out about it. So the credit people find out about it is we obviously do monthly reporting, but are you asking about the Fair Credit Reporting Act? I'm asking the negative implications that come from it. It's one thing to send a notice just to him and nothing happens. We're just letting you know to pay your debt. But it's another thing to send one and then you have other obligations to notify credit agencies, somehow the military knows about it, and how does that come into play here? Because it's one thing to say it's a benign letter. We just send a letter with a disclaimer on it, and that's the end of it. But apparently the credit agencies and stuff don't read that little language down at the bottom there that says the disclaimer and therefore if you're in bankruptcy and we're going to go check to see if you're in bankruptcy. I don't know what obligation, how you get rid of that. Maybe the person who is being the subject of it tells them, no, I'm out of this or whatever. So they complained, Judge Wynn, about three credit reporting disputes in this case. All three happened in 2019. And we do have an obligation if we get a dispute. The way the process works under the Fair Credit Reporting Act to have a claim is the borrower has to make a dispute with what are called CRAs, TransUnion, Equifax, and Experian. Then they send a dispute to the furnisher, and we were the furnisher, and we got a dispute in 2019 and 2020 from the three agencies. We reported back, investigated the dispute, and reported back. The Equifax one, the only record evidence is we didn't receive the dispute from Equifax. On TransUnion, we recorded nothing being owed. And then with Experian, there was a little derogatory credit that was reported to Experian. What the district court held was there was no causation because of the credit denials and any other damage that occurred was not caused by these credit reporting by PHH. And with respect to the security, which I'd like to say to the court, first of all, he never lost security clearance. It was suspended for a month because he didn't submit the information in time. Never lost his security clearance. And during this time period, he was promoted. So the district court found there was no adverse effects with security and the credit denials he had on various cars or mortgages were not caused by PHH in the credit reporting. Can I ask you a question about, go back to the disclaimer? I have two points to make about that, and I'd like you to respond. So it's true, I agree with you that the disclaimer, I think, is something that's been sanctioned by this court, and I don't have any quarrel with that. But I don't think it's correct to say that that is intended to be a, for lack of a better term, a get-out-of-jail-free card in every instance. I mean, if you've got a creditor who is sending a barrage of so-called information to the debtor, at some point I think any court would say that that's actually an attempt to collect the debt and not an innocuous disclaimer. So that's the first point. And the second point is you indicated that there were both letters and phone calls, and the plaintiff has alleged, at least with respect to the phone calls, that there were no disclaimers attached to those. So isn't that a factual dispute that we can't resolve? On the last question, Judge Diaz, the record evidence is there is a disclaimer made in the beginning of every phone call, and that was not disputed by the plaintiff. In the record, every phone call we make, we do the same disclaimer at the beginning of the phone call. Where is that in the record? I don't have the page number. That's in the record. But before you leave, if you don't mind, I mean, I recall that being evidence that, you know, you presented about how things are done. But to Judge Diaz's question, I thought that Mr. Guthrie disputed that. I thought we, you know, and you may say, no, we've got this custom, here's how we do it. But we don't have all records of all the phone calls. It's not like we have transcripts of everything. So as I remember, he said, no, that's not true. And that was in the record, too. Again, I'm not expecting you to agree with him, but, I mean, didn't he contest that in the record? I don't think so. You don't think so? I don't think so. He may have. And I guess that still goes back to we have the right post-discharge to communicate with him because he's still on title. You've got obligations with respect to taxes and insurance, even though there's a discharge and you surrender the property. And you have to give someone the complete picture of what is owed, both from taxes and insurance and the total debt. During the recession, people were, even though the personal debt was discharged, people were reaffirming they would want to keep the property. If they wanted to keep the property, they would need to know the total amount owed to maybe go refinance it. So there's a big distinction between getting out of the personal liability and still having title to the property. If you have title to the property, just like N. Ray Rose said, you've got byproducts of home ownership. And that's under the deed of trust. And the deed of trust between the lender and Mr. Guthrie said you had to pay taxes and you had to pay insurance and you have to upkeep the property. So I think that's fair. But if you assume these facts, assume in the phone calls you weren't giving the disclaimer. And assume in the phone calls you were seeking from Mr. Guthrie the amounts that had been discharged. Putting aside whether your remedy is contempt of the discharge order or not, wouldn't you agree that assuming those facts, which I know you contest, that would be improper? So hypothetically, let's say we called and said you owe a payment on this loan and you've got to pay $800 in 15 days. And let's say we didn't give the disclaimer. That would be money that was discharged. He has no personal liability on it. That's a violation of the discharge injunction. We're saying that is preempted by the bankruptcy code and his sole remedy for that is through contempt proceedings with the bankruptcy court. So if there was record evidence that effectively you were doing that, maybe not with the specificity of $800. I gave you an example. Because he, I thought, said that that's what happened. You all called him. You didn't give any disclaimer. You didn't say you're calling about, you know, you may have inquired about the wife, but then you went further with him. I don't know if any of that happened. I'm just saying that's what he said. And if that's true, it seems like there's a question of fact whether it's proper or not. And then our question is, if it is improper, is it preempted or is it something that is not? Yes. Do you at least agree with that analytical framework? I do. I think you look at the preemption first, because this entire case is about whether we violated the discharge injunction. Were we seeking money that was discharged? That is the predominant. If you look at the allegations in the complaint, they said after the fresh start, you chased us for that money. And we obviously had the disclaimers. And we're saying if we violated the discharge injunction, that is what's preempted. And we've cited the case law from all the bankruptcy courts and other courts that have cited that. One thing I'd like to say, when they were talking about a circuit split, they were talking about one federal law violating another federal law. This is bankruptcy code versus a state statute. This isn't federal law preempting another federal law. It's bankruptcy code preempting a state statute for the exact conduct that the bankruptcy court adjudicates and deals with. And it would always be post-discharge. You couldn't violate a discharge until a discharge was entered. And bankruptcy cases are reopened all the time for contempt charges and other sanctions. And actually, one remedy the bankruptcy court has is they can monitor a situation for a certain time period. So they have a wide discretion. So is it your position you are not seeking the debt that had been discharged,  Yes, that is exactly what we're saying. Taxes, and I assume this obligation to pay the creditor, arises under the mortgage agreement. Yes, sir. And he's still bound under the mortgage agreement even though he's not bound to pay the debt. Yes, sir. How do you have a mortgage agreement when a debt has been discharged? That's in the deed of trust. There's a promissory note in a deed of trust. The deed of trust would be relieved and released when the title was transferred. So this is a new debt, not a debt under the mortgage. Yes, sir. Yes, sir, Judge. It's a post- Those taxes are due to the property people who can then foreclose on the property. All of it has to be driven by how much equity you have in the property because a lot of times you don't care. Judge Wynn, that's our exact point. It's because those are post-discharge obligations for taxes and insurance. Let's say there's equity in this property and Mr. Guthrie may want to keep paying the taxes because he could sell the property and make money. In the N. Ray Rose case, the lender does not have the obligation to change the title. One follow-up back on preemption. I raised this with your colleague. My review, and this may be more in the context of the violation of the stay, was there was a lot of discussion about field preemption in the case law that I looked at on that. It may be that the reason you conceded, I'm surprised you conceded it, and I'd like to hear from you about why field preemption is not applicable. In doing that, in thinking about it up here, it may be that's because we're more in the realm of violating the discharge than the automatic stay provision. At least in the stay cases, the preemption discussion seems to focus on field at least as much as the conflict uniformity basis. Judge Qualabam, you said it perfectly. From 20, when he filed bankruptcy until the discharge order, you had the automatic stay. Then the discharge, the stay ends in 2016 when the discharge is granted. This case focused on post-2016 conduct. The lawsuit was filed in 2020. Any conduct before 2016 would have been time barred. If you read the allegations in the case, it all focuses on violation of the discharge order. Between 2013 and 2016, the violation of the stay is just not the claims in this case. They mention the stay in the allegations, but the claim really is violation of the discharge order. We believe conflict preemption, and there's actually a fourth type of preemption that we mentioned. It's called a uniformity. I don't know if you saw that in our briefing. We believe that applies and conflict preemption. I'm mindful of the case law on field preemption and automatic stay, but we believed it was more appropriate on the conflict because of the direct allegation and claim here. Thank you. Your Honor, the facts matter. There is not one single piece of evidence in this case that demonstrates that after the discharge, they were solely seeking to collect property-related expenses. Not one piece of evidence. So this whole discussion that we're having about Henry Rose and its implication, it doesn't matter because there is no mortgage statements. Pay the full amount. Reports to the credit reporting agencies. Pay the full amount. The calls. Pay the full amount. So the truth matters here, especially at summary judgment, and the truth is through all of the mortgage statements, through all of their activity, even through the 30-6 testimony, there is no evidence that they made any steps to affect. At least from your perspective, a disputed fact exists. Your Honor, it's the only fact. Because the only evidence that we have from PHH is from someone who submitted an affidavit after the case and had no personal knowledge whatsoever of any of the communications. And that's why we move for summary judgment. Because there is no dispute that they were always attempting to collect on the case, on everything. So the fact that they made this after lawsuits filed argument. If you got a disclaimer that says we're not coming after you for that and all that's left is the post. That's why I say maybe a dispute might exist. And let's talk about that disclaimer. One, Lovegrove was an unpublished case and appeared to kind of be victim-blaming. That won't work very well here. Okay. Well, maybe this will, Your Honor. Lovegrove specifically said this is not a case where a creditor harassed the debtor or tried to pressure the debtor into making payments through multiple phone calls or threats. That's our exact case. For eight years, that's exactly what happened. And so after this legally generated reason for why they were contacting, the plaintiff isn't supported at all in the record. And we do have the transcripts of the phone calls, at least some of them. If we say there's a question of fact about what happened, whether it was just taxes and insurance or everything else, we've got that issue and we've got to then grapple with the preemption issue, right? That's and, you know, there's back to, I guess, my question earlier. And, you know, I've kind of posed it to both of you all to address it. Again, if you're really, if the main issue is you're seeking discharge debts, why is the, why don't we consider the fact that Congress didn't allow a private cause of action as, you know, as a decision that supplants state law? Your Honor, when you're looking at preemption, and this is U.S. Supreme Court as well as Fourth Circuit law, the presumption is that it's not preempted if you look at the Wyeth cases and some other cases. So it also doesn't, the code also doesn't say you can't assert these claims. And if you look at just how the practice of this is, almost all of the bankruptcy courts in the Fourth Circuit have said, these exact claims are not preempted. There's the Gator case, which was referenced, which was expressly overruled by Judge Biggs in the Middle District. So, one, we have to deal with the actual facts at issue here. I will just note the FCRA claims. There was something said about that. The FCRA results specifically indicate that the client was delinquent in his payments and that the full amount of the balance was owed. And this result of the transunion result in 2019 was the basis for the denial of his car loan. And we also have other disputes that went back to 2015, you know, 2016, 2017. So if the bankruptcy court judges are not finding preemption, and they're the ones that apparently we need to protect, then there is no conflict. You know, just because there's similar claims does not mean that there can be overlap without conflict, unless you show that there's some impossibility as opposed to just citing it to some case law. All right. Thank you. Thank you. Thank you. I'll ask the judges if you have further questions. I think both of you will come down and greet you, and then we will proceed to the— we will take a short recess and come back to the last two cases. This honorable court will take a brief recess.
judges: James Andrew Wynn, Albert Diaz, A. Marvin Quattlebaum Jr.